LEDYARD and Others *v.* CHAPIN and Others.

*A.* and others obtained judgments at law against *B.*, who was the owner of a tract of land, but had no other property subject to execution. *Held*, that a bill would lie on behalf of the judgment-plaintiffs to remove a cloud from the title.

When the money to secure which a mortgage has been executed is fully paid, the mortgage is *functus officio* and inoperative for any purpose.

APPEAL from the *St. Joseph* Circuit Court.

PERKINS, J.—Bill in chancery by *Small, Williams & Co.* and *Chapin*, for the use, &c., against *Ledyard* and others, to procure the removal of a cloud hanging over the title to real estate. Decree below for the plaintiffs.

The plaintiffs in the bill obtained judgments at law against one *Barbour*, took out executions and levied them upon certain real estate of which they claimed that he was the beneficial owner, but which was incumbered by a mortgage executed to the *American Life Insurance and Trust Company*, and assigned to one *Ledyard*, for, of principal and interest, near 15,000 dollars, an amount greater than the value of the lands mortgaged. *Barbour* has no other property out of which the judgments can be collected, and the judgment and execution-plaintiffs have a right, therefore, to this bill to remove the incumbrance, if invalid.

The record is one of great length, but the point is in a nutshell, and turns upon a simple question of fact.

*Barbour* executed the mortgage in question, to be used by *Smith* as collateral security for a loan to be made to himself by the *Life Insurance and Trust Company* above mentioned. It was deposited with other securities by *Smith* with that company, and a loan obtained. Subsequently it was arranged that the securities might be successively redeemed and withdrawn, by paying the proportion of the loan respectively assessed upon each. On this mortgage by *Barbour* the assessment was a fraction over 1,000 dollars. At this stage, *Smith* makes an arrangement with *Ledyard*, that if he will pay him, *Smith*, 2,000

dollars, he will have the insurance company, when he redeems the mortgage, assign it over to him, *Ledyard;* and accordingly *Smith* pays the insurance company 1,050 dollars, withdraws the mortgage, gets the company to place upon it an assignment to *Ledyard*, to whom *Smith* delivers it, and receives his 2,000 dollars for a seven per cent. 10,000 dollar mortgage. *Ledyard* is now seeking to enforce this mortgage, amounting to about 15,000 dollars, against *Barbour's* real estate, *Barbour* never having received any consideration for the mortgage. *Ledyard* undoubtedly knew all the circumstances. If he did not, he must have been grossly careless and stupid.

May Term, 1855.

When the mortgage was taken up by paying the amount it was deposited to secure, it was *functus officio* and dead, and could be no longer available in the hands of any one. This fact disposes of the case, and at the same time shows it to be fraud on the part of *Smith* and *Ledyard* to seek to enforce it—a fraud upon *Barbour* and his creditors, unless, indeed, which may be the case, *Barbour* is a secret party to the transaction between *Smith* and *Ledyard*, and to reap, or share in, the benefit expected to be derived from it; and, at all events, a fraud upon *Barbour's* creditors.

*Per Curiam.*—The decree is affirmed with costs.

*J. L. Jernegan*, for the appellants.

*J. A. Liston* and *J. W. Gordon*, for the appellees.