INTERNATIONAL ALLIANCE THEATRICAL STAGE EMPLOYEES and M.P.M.O. of the United States and Canada, Local Number 30, et al., Appellants (Defendants Below),

v.

SUNSHINE PROMOTIONS, INC.,
Appellee (Plaintiff Below).

No. 49A04–8910–CV–466.

Court of Appeals of Indiana,
Fourth District.

June 27, 1990.

---

Barbara J. Baird, Fred O. Towe, Fillenwarth, Dennerline, Groth & Baird, Indianapolis, for appellants.

David M. Mattingly, Todd W. Ponder, Ice, Miller, Donadio & Ryan, Indianapolis, for appellee.

CONOVER, Judge.

Defendants–Appellants International Alliance Theatrical Stage Employees and M.P.M.O. of the United States and Canada, Local Number 30, and the individual members thereof, (collectively, the Union) appeal the trial court's refusal to dismiss a permanent injunction.

We reverse.

We address only the following restated issue:

> Whether the trial court lacked subject matter jurisdiction to issue the injunction against the Union.

Sunshine Promotions, Inc. (Sunshine), is engaged in the business of arranging, producing, promoting, programming and marketing live entertainment at various locations throughout the Indianapolis metropolitan area. At the time the underlying labor dispute began in 1986, the Union represented stage-hand employees working at Sunshine's summer concert series conducted at the Indianapolis Sports Center near downtown Indianapolis. After expiration of the collective bargaining agreement on April 30, 1986, Sunshine and the Union failed to reach agreement on a new contract and Sunshine began utilizing non-union stage-hands to work the summer concert series. Union stage-hands, however, continued to work at Sunshine promoted shows held at other large capacity concert venues in the Indianapolis area, including Market Square Arena.

The Union began picketing the Indianapolis Sports Center during Sunshine promoted events and continued to be engaged in such activity at the time the disputed injunction was issued. On June 18, 1986, Sunshine filed a petition for preliminary injunction alleging the Union and other named individual defendants interfered with Sunshine's business by blocking the ingress and egress of persons and vehicles at the Indianapolis Sports Center, Sunshine's offices and Market Square Arena, by engaging in physical and verbal abuse and threats to Sunshine employees, contractors and entertainers, and by committing acts of sabotage. Sunshine further alleged the Union had contacted performers and threatened them with "repercussions" if they performed at Sunshine shows at the Indianapolis Sports Center with the assistance of non-union stagehands. Sunshine also filed an "Alternative Motion for Preliminary Injunction or Motion for Temporary Restraining Order."

The record indicates the trial court scheduled a hearing on Sunshine's motion for June 19, 1986. The court made no docket entry stating a hearing was held. It issued a permanent injunction on June 19, in which it indicated the Union was given an opportunity to be heard and present evidence. There is no indication any testimony was ever heard or evidence entered from either the Union or Sunshine. On June 26, 1986, the Union filed an Answer which denied several of the averments set forth in the Verified Complaint.

On June 9, 1989, the Union filed a petition to dissolve the injunction on the basis the trial court lacked subject matter jurisdiction to issue the injunction because it failed to comply with Indiana's Anti-Injunction Act (IND.CODE 22–6–1–1 et seq.).[1] The court heard oral argument, but refused to dissolve the injunction. This appeal followed.

■ The Union contends the trial court lacked subject matter jurisdiction to issue

the injunction because it failed to make the necessary findings under IC 22–6–1–6. The Union contends because the court lacked jurisdiction to issue the injunction, the injunction was void. A void judgment may be attacked at any time. *Smith v. Tisdal* (1985), Ind.App., 484 N.E.2d 42, 45.

■ Whenever equitable relief is sought in the context of a dispute involving labor relations, the trial court must initially inquire whether the Anti–Injunction Act has withdrawn the court's jurisdiction to grant the desired remedy. *International Association of Machinists and Aerospace Workers, Local No. 1227 v. McGill Manufacturing Co., Inc.* (1975), 164 Ind.App. 321, 328 N.E.2d 761, 764. The Act states:

> No court of the state of Indiana, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, *except in a [sic] strict conformity with the provisions of this chapter;* nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter. (Emphasis supplied).

IC 22–6–1–1.

The primary focus of the Act is the minimization of judicial control related to labor disputes. In order to effectuate this policy "the Act transforms a request for injunctive relief by a party to a labor dispute into a special statutory proceeding; the statute establishes a complex set of procedural requirements which strictly circumscribe the equity jurisdiction of trial courts." *McGill, supra.* The procedural requirements which the trial court must follow are found at IC 22–6–1–6 (1986), which states, in pertinent part:

> No court of the state of Indiana shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the

---

1. The petition also alleged changed circumstances due to Sunshine's promotion of concerts at Deer Creek Music Center instead of the Sports Center warranted dismissal or modification of

the injunction. Additionally, the petition alleged violation of constitutional and federal statutory rights.

testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect;

(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

(b) That substantial and irreparable injury to complainant's property will follow;

(c) That as to each item of relief granted [sic] injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief; and

(d) That complainant has no adequate remedy at law;

(e) That the public officer charged with the duty to protect complainant's property is unable or unwilling to furnish adequate protection. Such hearings shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to the chief of those public officers of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's property; ....

The procedural safeguards of IC 22–6–1–6 are "intended by the Legislature to operate as a 'safety valve' against hasty and ill-considered judicial intervention into labor-management contests." *McGill*, 328 N.E.2d at 766. The statute requires the court to weigh evidence presented at a hearing and to make specific findings evidencing the court's consideration of all the critical elements listed in the statute.

■ In the present case the trial court failed to comply with the statute in a number of ways. First, there is no record any testimony in support of the allegations was ever heard under oath. Second, the court failed to make a finding regarding the relative impact of the relief granted. Third, the court made no finding the public officers charged with the duty to protect Sunshine's property were unable or unwilling to protect the property. There is also no indication notice was sent to the chief of said public officers.

In addition to its failure to meet these statutory requirements, the court also failed to comply with the spirit of the Act as stated in *McGill*. Sunshine filed its petition and request on June 18, 1986 and the court scheduled a hearing on the propriety of issuing a *temporary* injunction or restraining order on the very next day. Instead of making a temporary determination, the court issued a permanent injunction without hearing evidence to support the allegations. The court's action amounted to a *McGill* "hasty and ill-considered intervention into a labor-management contest."

Sunshine contends *McGill, supra,* and the underlying case of *State ex rel. Taylor v. Circuit Court of Marion County* (1959), 240 Ind. 94, 162 N.E.2d 90, are distinguishable from the present case. Sunshine notes McGill neglected to invoke the trial court's jurisdiction because of its failure to allege all the factual assertions enumerated by statute, while Sunshine made all the necessary allegations. Sunshine further notes the *Taylor* case concerned the issuance of an *ex parte* temporary restraining order rather than the issuance of a permanent injunction after the Union was afforded a chance to present evidence.

The crux of both *McGill* and *Taylor* is that the requirements of the Anti–Injunction Act must be strictly complied with. The *McGill* court held the trial court was divested of jurisdiction because of McGill's failure to make proper allegations. Additionally, the court noted the trial court

would be divested of jurisdiction if it did not enter specific findings or require the employer to adduce evidence in support of each material allegation of its complaint. 328 N.E.2d at 765. In *Taylor*, the court reversed the trial court on the basis "the record fails to disclose that testimony was heard as required by the statutes." 162 N.E.2d at 93. The cases are both clearly applicable to the present case.

Sunshine further contends it was unnecessary for the trial court to comply with IC 22–6–1–6 because the allegations of Sunshine's complaint were uncontroverted and there was no need to hear live testimony. Thus, Sunshine characterizes the presentation of live testimony as an "unnecessary charade." (Appellee's Brief at 10). Sunshine places primary reliance on *Local Lodge No. 1266, International Association of Machinists and Aerospace Workers, AFL–CIO v. Panoramic Corporation* (7th Cir.1981), 668 F.2d 276, 290.

The record in the present case contains, in sequence, the filing of the Verified Complaint on June 18, 1986; the Notice of Hearing filed June 18, 1986;[2] the "Alternative Motion for Preliminary Injunction or Motion for Temporary Restraining Order" filed June 19, 1986; an Order Book Entry dated June 19, 1986, stating only that the trial court is filing the permanent injunction; and the Permanent Injunction. The docket is silent regarding the scheduled hearing on the preliminary injunction. The permanent injunction recites the following:

> This cause came to be heard upon plaintiff Sunshine Promotions, Inc.'s Verified Complaint and Alternative Motion for Preliminary Injunction or Motion for a Temporary Restraining Order filed with the Court on June 18, 1986.
>
> After reviewing the Verified Complaint and motion of Sunshine Promotions, Inc., and giving defendants the opportunity to be heard and to present evidence, the Court now finds that this case is in the proper posture for the entering of a permanent injunction on the matters alleged in the Verified Complaint.

(R. 23).

The recital in the injunction fails to establish any evidence was entered in support of Sunshine's allegations. In *Indianapolis Dairymen's Co–Op. Inc. v. Bottema* (1948), 226 Ind. 260, 79 N.E.2d 409, 471, our supreme court held a verified petition or application for an injunction must be introduced into evidence before the trial court may consider its allegations as a basis for a finding. The court accordingly found there was no evidence in the record upon which the injunction should issue. The same is true in the present case. There was no evidence for the Union to controvert.[3]

Furthermore, the facts of *Panoramic* are distinguishable from the facts of the present case. In *Panoramic*, the Seventh Circuit Court of Appeals held the peculiar circumstances of the case warranted deviation from the federal requirement of a full evidentiary hearing before the issuance of a *preliminary* injunction. 668 F.2d at 290. The court affirmed the district court's issuance of the preliminary injunction since

---

2. The only notice given was to the Union and its attorney. None of the numerous individuals named in the complaint as defendants were given notice.

3. Sunshine places heavy emphasis on the Union's alleged failure to controvert the "evidence" in support of Sunshine's claims. Assuming a Union is required to put on evidence to avoid the issuance of a permanent injunction after less than one day's notice (an assumption completely at odds with the entire Anti–Injunction Act), we find the record does not support Sunshine's allegation of the Union's acquiescence to the "evidence."

The trial court made no record of any hearing and stated in the permanent injunction only that "defendants [were given] the opportunity to be heard and to present evidence." (R. 23). There is no indication whether evidence was presented or not. In its subsequent dismissal of the Union's motion to dissolve the injunction, the court, after oral argument, decided the decision to issue a permanent injunction was by consent of all the parties. The basis for this decision was the court's injunction language. However, nothing in the language of the injunction indicates the Union consented to the issuance of a permanent injunction.

In its dismissal, the trial court also states the Union and its members admitted to committing unlawful acts. There is no indication individual members were ever given notice of the original hearing, let alone attended the "hearing."

the defendant refused the district court's offer to enter a temporary restraining order and schedule a full evidentiary hearing at a later date. Of paramount importance to the court's decision was the fact that time was of the essence because the subject of the injunction—the proposed sale of part of the company—was to occur the next day. The facts upon which the *Panoramic* court relied upon to affirm the district court's preliminary injunction are not present in this case. Even if they were, they would not warrant the issuance of a *permanent* injunction without a full evidentiary hearing.

 Sunshine also argues the present case, like *Wiest v. Dirks* (1939), 215 Ind. 568, 20 N.E.2d 969, warrants an exception from the strict requirements of the Anti–Injunction Act. In *Wiest*, our supreme court held the requirement of allegation and proof of the inability or unwillingness of police officers to protect a complainant's property could be dispensed with when the unlawful acts charged do not include "... any acts of violence or trespass against which a policeman or peace officer has power or authority to protect the plaintiff's property,...." 20 N.E.2d at 970.

The particular exception included in *Wiest* does not apply in the present case because the allegations are based on acts constituting violations of a criminal nature. These acts require police protection for the complainant. Furthermore, we do not agree with Sunshine that the record in the present case warrants a new exception. Under the act, any immediate danger to Sunshine's property could have been prohibited by a temporary restraining order or injunction. There was no need to ignore the requirements of the Act and issue a permanent injunction without eliciting evidence supporting the allegations of the complaint or allowing the Union sufficient time to respond to the allegations.

 Finally, Sunshine contends the trial court's failure to make the required find-

ings of fact was mere technical error, and not jurisdictional error. In support of this argument, Sunshine cites *Fair Share Organization, Inc. v. Mitnick* (1963), 134 Ind. App. 675, 188 N.E.2d 840, *trans. denied* (a temporary injunction may be issued upon a review of the court's finding as a whole); *Murrin v. Cook Brothers Dairy, Inc.* (1956), 127 Ind.App. 23, 138 N.E.2d 907 (required findings of fact may be implied from other language of the injunction); and *Bartenders, Hotel & Restaurant Employees Union Local 103, A.F. of L. of South Bend, et al. v. Clark Restaurants, Inc.* (1951), 122 Ind.App. 165, 102 N.E.2d 220, *trans. denied* (a complaint for a temporary restraining order need only substantially comply with statutory prerequisites).

The cases cited by Sunshine are inapplicable to the present case. The basis for the decisions was the temporary nature of the court's ruling. Thus, "[t]he reason [for allowing the issuance of the temporary order or injunction on less than all the required statutory findings] is that the evidence must merely show that the case is a proper one for investigation not that the plaintiff will *necessarily* be entitled to relief." *Fair Share, supra,* 188 N.E.2d at 846 (emphasis in original). The cases do not stand for the proposition a permanent injunction may be issued without strict compliance with the Anti–Injunction Act.

 In summary, the trial court did not comply with the strict procedural prerequisites of the Anti–Injunction Act when it gave one day notice of a hearing on a preliminary injunction or restraining order, and then issued a permanent injunction without adducing evidence supporting the allegations of the complaint. Additionally, while such short notice may be appropriate before a preliminary or temporary determination is issued, the need to avoid hasty intervention requires the court to allow the Union time to prepare and present its case before a permanent injunction is issued.[4]

4. The following quotation from Mr. Justice Frankfurter illustrates the necessity of our decision:

Improvident denial of the injunction may be irreparable to the complainant; improvident issue of the injunction may be irreparable to the defendant. For this situation the ordinary

 

The necessity of reversal is further shown by the court's failure to make the required findings under IC 22–6–1–6 (1986). In short, the trial court failed to follow the Anti–Injunction Act, and such failure divested the court of jurisdiction to issue its injunction.

Reversed.[5]

CHEZEM, P.J., concurs.

ROBERTSON, J., concurs.

mechanics of the provisional injunction proceedings are plainly inadequate. Judicial error is too costly to either side of a labor dispute to permit perfunctory determination of the crucial issues; even in the first instance, it must be searching. The necessity of finding the facts quickly from sources vague, embittered and partisan, colored at the start by the passionate intensities of a labor controversy, calls at best for rare judicial qualities. It becomes an impossible assignment when judges rely solely upon the complaint and the affidavits of interested or professional witnesses, untested by the safeguards of common law trials—personal appearances of witnesses, confrontation and cross-examination.

But the treacherous difficulties presented by an application for an injunction are not confined to the ascertainment of fact; the legal doctrines that must be applied are even more illusory and ambiguous. Even where the rules of law in a particular jurisdiction can be stated, as we have tried to state them, with a show of precision and a definiteness of contour, the unknowns and the variables in the equation—intent, motive, malice, justification—make its application in a given case a discipline in clarity and detachment requiring time and anxious thought. With such issues of fact and of law, demanding insight into human behavior and nicety of juristic reasoning, we now confront a single judge to whom they are usually unfamiliar, and we ask him to decide forthwith, allowing him less opportunity for consideration than would be available if the question were one concerning the negotiability of a new form of commercial paper. We ease his difficulty and his conscience by telling him that his decision *is only tentative.* (Emphasis supplied).

FRANKFURTER & GREENE, THE LABOR INJUNCTION 200–02 (1929). (A lengthier quotation can be found in *McGill, supra,* 328 N.E.2d at 766 n. 2).

5. Since the injunction was void due to the trial court's lack of jurisdiction, we need not remand to the lower court to determine whether the motion challenging the judgment order was filed within a reasonable time under T.R. 60(B). A void judgment is of no effect, and an action may be brought to seek relief therefrom at any time. *Smith, supra,* 484 N.E.2d at 45 (*citing State v. Lindsey* (1952), 231 Ind. 126, 106 N.E.2d 230; *Schoffstall v. Failey* (1979), 180 Ind.App. 528, 389 N.E.2d 361).